# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

2017 JUL 12 P 2: 16

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| SHARRISSE GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:17-cv-461 |
| | ) | |
| PHA BODY SYSTEMS, LLC | ) | |
| and JEAN JOHNSON, | ) | PLAINTIFF DEMANDS |
| | ) | TRIAL BY STRUCK JURY |
| Defendants. | ) | |

## COMPLAINT

## INTRODUCTION

Plaintiff Sharrisse Gibson brings this action for legal and equitable relief to redress unlawful employment practices and violations of federal and state law by Defendant PHA Body Systems, LLC and Defendant Jean Johnson.

## JURISDICTION AND VENUE

1. Plaintiff seeks legal and equitable relief to redress Defendants' violations of the Plaintiff's rights secured by:

    a. Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., as amended;

    b. The laws of the State of Alabama.

2.      Federal subject matter jurisdiction exists pursuant to:

   a.      28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), 1367

           (pendent jurisdiction);

   b.      42 U.S.C. § 2000e-5(f).

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## PARTIES

4.      Plaintiff Sharrisse Gibson (hereinafter "Plaintiff" or "Gibson") is a
resident of Elmore County, Alabama, and is over the age of nineteen (19) years.
Gibson was employed by Defendant PHA Body Systems, LLC in Montgomery
County, Alabama at all times relevant to this lawsuit.

5.      Defendant PHA Body Systems, LLC (hereinafter "Defendant" or
"PHA") was Gibson's employer at all times relevant to this lawsuit.   Defendant
employs at least fifteen (15) persons within the meaning of Title VII of the Civil
Rights Act of 1964, as amended.   Defendant is an enterprise engaged in commerce
or in the production of goods for commerce in Montgomery County, Alabama as
defined under 29 U.S.C. § 203(s)(1)(B)&(C).

6.      Defendant Jean Johnson (hereinafter "Johnson") is a resident of Elmore
County, Alabama, and is over the age of nineteen (19) years.   Johnson was
employed by PHA in Montgomery County, Alabama at all times relevant to this

2

lawsuit.

## NATURE OF ACTION

7.     This is an action to redress grievances resulting from acts of Defendants, their agents, servants, and employees with respect to Gibson's employment; and for a permanent injunction restraining Defendants from maintaining a policy or practice of discrimination on the basis of sex and pregnancy.

8.     Plaintiff seeks all legal and equitable relief to which she is entitled, including attorneys' fees and costs.  Plaintiff further requests injunctive relief prohibiting Defendant PHA from further illegal discrimination and requiring it to provide training on employment law and reporting procedures, at its cost, for all employees, managers, and trustees of Defendant.  Further relief is requested as deemed appropriate by this Court.

## ADMINISTRATIVE PROCEDURES

9.     On September 2, 2016, within 180 days of the acts of discrimination of which she complains, Gibson filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC").  **(See Exhibit A)**.

10.     On April 14, 2017, the EEOC issued Gibson a Notice of Right to Sue. **(See Exhibit B)**.

11.     Gibson has met all prerequisites to the filing of this lawsuit.

## STATEMENT OF FACTS

12.     Gibson is female and was pregnant at all times relevant to Gibson's claims.

13.     On December 29, 2015, Defendant PHA hired Gibson as a Human Resources Assistant, immediately following her job interview on that day.

14.     Gibson began work on January 4, 2016.

15.     PCH assigned Gibson to work under Defendant Johnson, Human Resource Manager.

16.     On January 19, 2016, Gibson learned that she was pregnant and informed Johnson of her pregnancy.

17.     Johnson immediately became openly critical of Gibson.    Johnson accused Gibson of deceiving her during the interview about her pregnancy, saying Gibson had "hoodwinked" and "blindsighted" her.    Gibson repeatedly told Johnson that she did not know she was pregnant until January 19, 2017.

18.     Johnson was openly hostile about Gibson's pregnancy and addressed it as a negative in the workplace.    Johnson made remarks in a loud voice such as, "You know you aren't going to get paid," and "What am I supposed to do when

4

you're gone (in reference to maternity leave)," and "Now I have to find someone to fill your position and then train them."

19.    Johnson continued her angry and hostile comments about Gibson's pregnancy, about how badly Gibson and her pregnancy were an inconvenience to her, and continued to accuse Gibson of hiding her pregnancy during the interview to deceive Johnson.   Gibson continually replied that she did not learn of her pregnancy until January 19, 2016.

20.    Johnson refused to believe Gibson and began interrogating her about her menstrual cycle, asking when she had had her last period.   Johnson said she had "done the calculations" and said, "You had to know you were pregnant" at the time of the interview.   Despite Gibson's numerous reassurances and explanations, Johnson continued to harass and belittle Gibson, questioning her further with hostility about the dates of her menstrual cycle and pregnancy.

21.    On March 2, 2016, Johnson called Gibson before work at 7:00 a.m., asking Gibson to pick her up because her car would not start.   Gibson informed Johnson that she was already at work.   Johnson persisted, and Gibson was forced to leave work to transport Johnson to work.   Gibson drove Johnson home after work, and transported her to and from work the following day at Johnson's request.

5

22.    On March 3, 2016, Gibson attended a personnel meeting with Johnson and a female PHA employee.  During the meeting, Johnson bullied, mocked, and harassed the female employee until she was reduced to tears.  Johnson refused to allow the employee's supervisor to be present in direct contradiction of PHA policy.  Whenever the female employee attempted to speak or ask questions regarding Johnson's allegations, Johnson would not allow her to speak.  Johnson would talk over the female employee in a belittling, hostile manner.  When the female employee was finally allowed to speak through her tears, she presented compelling information that led Gibson to believe that Johnson's allegations against the female employee were untrue and manufactured.  Gibson did not affirmatively state to the employee that she agreed with her; however, Gibson did comment "uh huh" every now and then as part of the meeting.  In response, Johnson forcibly kicked Gibson twice under the table.

23.    After the meeting, Johnson told Gibson that, as part of her human resource strategy, she intentionally went out of her way to harass the female employee so that the employee would feel helpless and know that Johnson was the only person in the room with any power.  Gibson perceived Johnson's actions and comments as an attempt to intimidate her through Johnson's treatment of the other female employee.

6

24.    Johnson's hostile behavior towards Gibson escalated.    In late March 2016, Johnson was out of the office on a personal matter.    Gibson was left to cover the Human Resources office.    An employee came in to file a complaint and asked that Gibson bring it to Johnson's attention upon her return.    Gibson assisted the employee in documenting her complaint and brought it to Johnson's attention upon her return to the office.    Johnson immediately became angry and started screaming at Gibson that she should not have assisted in "employee relations." Gibson asked Johnson to stop screaming at her.    Johnson continued screaming, saying she could scream or do whatever she wanted to Gibson, and that Gibson had no say in the matter.

25.    Later that day, Johnson issued Gibson a written disciplinary action for being "disrespectful."    Gibson asked why she was being disciplined, and Johnson refused to answer.    Gibson requested to submit a written response to the discipline for her file, but Johnson refused.    Johnson also refused Gibson's request for a copy of the disciplinary action.

26.    Johnson's open hostility to Gibson escalated and she became overly critical of Gibson's work and loudly chastised her in the workplace.    If Gibson asked Johnson a question, she would do so with hostility or a mocking tone and then belittle Gibson or roll her eyes at Gibson to further demean her.

7

27.    Johnson isolated Gibson from employees, ignored her, and purposely excluded her from group meetings and lunches as further hostility to Gibson and her pregnancy.

28.    Johnson ordered Gibson to pick up large cases of water and other beverages and move them within the office and then Johnson would say things like, "Ain't nothing wrong with you, you just pregnant."

29.    On or around April 7, 2016, Johnson called Gibson into the conference room, stating that she was working on Gibson's 90-day performance review.    Johnson told Gibson that she was considering terminating her.    Johnson again began to question Gibson about her pregnancy.    Johnson said she knew Gibson was due to deliver her baby in July and not in September.    Johnson ordered Gibson to bring in her OB/GYN medical records so that she could personally review them and make a determination about her pregnancy and due date for the birth of her baby.    Johnson told Gibson she had the right to know Gibson's personal medical information so that she could "prepare."    Johnson told Gibson that it was not fair that Gibson gave her such short notice about her pregnancy and due date.    Gibson continued to reiterate that her due date was September 18, 2016, even though Johnson insisted that is was July.

8

30.    During the same meeting, Johnson accused Gibson of wearing Spanx, a brand of body slimming undergarments, in an effort to conceal her growing midsection.    Gibson informed Johnson that her accusations were untrue. Johnson insisted that she saw Gibson wearing Spanx in order to hide her pregnancy.    Johnson reiterated her accusations that Gibson lied to her to conceal her pregnancy during her interview.

31.    During the same April 7, 2016 meeting, Johnson left the issue of Gibson's pregnancy as a negative and moved on to her hair.    Johnson told Gibson that, since Gibson keeps her hair natural, she needed to do more with it.    Johnson remarked that it looked dry and ungroomed.    Gibson looked at Johnson with a surprised expression, to which Johnson responded, "I'm serious, you know it's true, girl."    Johnson then took a picture of Johnson's hair from the back, told her to look at it, and said she knew that was not the look Gibson was going for. Johnson was speechless and completely offended at being attacked about her pregnancy, her ethnic hair, and being referred to as "girl" in a racially-hostile tone and manner.    All Gibson could manage to say was, "Okay" and walk away.

32.    On April 20, 2016, Johnson called Gibson to the conference room. Don Stalnaker, Production Manager, was present.    Johnson informed Gibson that she was writing her up for correcting an employee's pay rate incorrectly.    Gibson

9

objected and explained that Johnson who had specifically instructed her to make the change to the employee's pay note. Johnson's hostility became explosive, accused Gibson of lying, and told her that the meeting could be a termination meeting. Gibson apologized and said she must have misunderstood Johnson's instructions about the employee. Johnson ordered Gibson to type a letter of apology to the employee for whom she had corrected the pay. Even though Gibson knew she had done nothing wrong, she did as Johnson asked so that Johnson would not write her up again or use this as an excuse to terminate her employment.

33.    On April 22, 2016, Johnson asked Gibson to come in the next day, Saturday, April 23, 2016, for a meeting. When Gibson arrived, Dan Stalnaker was present. Johnson wrote Gibson up for the same thing Johnson had written Gibson up for on April 20, 2016. Gibson asked why Johnson would write her up twice for the same issue. Johnson's only response was that Gibson was being terminated effective immediately.

34.    Johnson ordered Gibson to leave the premises immediately. PHA did not pay Gibson for working on Saturday and contested Plaintiff's application for unemployment benefits knowing Plaintiff was pregnant and would have difficulty finding other employment.

10

35.   Gibson's baby was born on September 14, 2016.

## COUNT I

## TITLE VII - SEX DISCRIMINATION AND HARASSMENT AGAINST DEFENDANT PHA BODY SYSTEMS, LLC

36.   Plaintiff re-alleges the facts above as if fully set forth herein.

37.   Plaintiff is female and was pregnant at all times relevant to this claim.

38.   Plaintiff after announcing her pregnancy to her supervisor Jean Johnson, Human Resources Manager suffered from severe or pervasive discrimination and harassment based on gender and pregnancy during her employment with PHA.

39.   Plaintiff endured regular, offensive, derogatory, gender and pregnancy-related comments during her employment.

40.   Defendant Johnson interrogated Plaintiff about her menstrual cycle, her private medical information, her underwear, and her pregnancy.   Johnson was openly hostile and critical of Plaintiff's pregnancy.

41.   Plaintiff was highly offended by the comments.

42.   Defendant Johnson's conduct was demeaning, degrading, and caused Plaintiff to suffer extreme embarrassment and humiliation.

43.   Defendants terminated Gibson's employment because of her sex and pregnancy.

11

44.     Defendants' termination of Gibson and other discriminatory conduct were motivated by sex.

45.     Defendant treated male employees more favorably in the terms, conditions, and pay of their employment.

46.     Defendants failed to employ policies, procedures, and training sufficient to prohibit sex discrimination and harassment.

WHEREFORE, Plaintiff requests the following relief:

a)      Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

b)      Grant a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Title VII of the Civil Rights Act of 1964, as amended;

c)      Award such other and further relief as this Court deems just and proper.

## COUNT II

## TITLE VII – PREGNANCY DISCRIMINATION AND HARASSMENT AGAINST DEFENDANT PHA BODY SYSTEMS, LLC

47.     Plaintiff re-alleges the facts above as if fully set forth herein.

48.     Plaintiff is female and was pregnant at all times relevant to this claim.

49.     Plaintiff endured regular, offensive, gender- and pregnancy-related comments during her employment with PHA.

50.     Defendant treated Plaintiff adversely in comparison with male employees and female employees who were not pregnant.

51.     Plaintiff suffered from severe or pervasive harassment based on pregnancy during her employment with PHA.

52.     Plaintiff endured regular derogatory and intrusive comments related to her pregnancy from Defendant Johnson.

53.     Defendant Johnson interrogated Plaintiff about her menstrual cycle, her private medical information, her underwear, and her pregnancy.   Johnson who was openly hostile and critical of Plaintiff's pregnancy.

54.     Plaintiff was highly offended by the comments.

55.     Defendant Johnson's conduct was demeaning, degrading, and caused Plaintiff to suffer extreme embarrassment and humiliation.

56.     Defendants terminated Gibson's employment because of pregnancy.

57.    Defendants' termination of Gibson and other discriminatory conduct were motivated by her pregnancy.

58.    Defendant treated male and non-pregnant employees more favorably in the terms, conditions, and pay of their employment.

59.    Defendants failed to employ policies, procedures, and training sufficient to prohibit pregnancy discrimination and harassment.

WHEREFORE, Plaintiff requests the following relief:

a)    Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

b)    Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Title VII of the Civil Rights Acts of 1964, as amended;

c)    Award such other and further relief as this Court deems just and proper.

## COUNT III

### INVASION OF PRIVACY
### AGAINST ALL DEFENDANTS

58.     Plaintiff re-alleges the facts above as if fully set forth herein.

59.     Defendant Johnson subjected Gibson to egregious discrimination and harassment based on Gibson's sex and pregnancy.

60.     Johnson asked Gibson highly-personal, intrusive, and offensive questions about her menstrual cycle, private medical information, underwear, hair and pregnancy.   Johnson took photos of Gibson without her permission.   Johnson set up Gibson for termination because she was pregnant.

61.     Defendant Johnson's acts, and PHA's failures to prevent them, invaded Plaintiff's physical or emotional sanctum, causing her harm.

62.     Defendants also invaded Plaintiff's privacy by placing her in false light to others and publicizing false reasons for her discipline and termination.

63.     Defendants' intrusion was so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation.

WHEREFORE, Plaintiff requests the following relief:

a)     Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief,

15

compensatory and punitive damages, costs, interest, and attorneys'
fees;

b)     Grant a permanent injunction enjoining Defendants, its agents,
successors, employees, attorneys, and those acting in concert therewith
from continuing to violate the state laws asserted;

c)     Award such other and further relief as this Court deems just and
proper.

## COUNT IV

## ASSAULT AND BATTERY
## AGAINST DEFENDANT JEAN JOHNSON AND PHA BODY SYSTEMS, LLC

64.    Plaintiff re-alleges the facts above as if fully set forth herein.

65.    Defendant Johnson was Plaintiff's supervisor and the Human
Resources Manager at PHA.   Johnson forcibly kicked Gibson under the table twice
during an employee counseling meeting knowing she was pregnant.   Johnson also
forced Gibson to pick up and carry cases of bottled water and canned soft drinks so
as to injure Gibson and her unborn child.   There was no legitimate business reason
for Defendant to kick the Plaintiff or force her to carry bottled heavy objects other
than to harm her and her unborn child because Defendants felt inconvenienced by
Plaintiff's pregnancy.

16

66.    Defendants' conduct was intentional to harm Plaintiff and her child.

67.    Plaintiff suffered harm as a result of Defendants unlawful conduct.

WHEREFORE, Plaintiff requests the following relief:

a)    Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

b)    Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate the state laws asserted;

c)    Award such other and further relief as this Court deems just and proper.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

68.    Plaintiff re-alleges the facts above as if fully set forth herein.

69.    Defendants Johnson and PHA subjected Plaintiff to egregious, intrusive, ongoing ridicule and harassment before terminating her employment without cause.

70.    Defendant Johnson was Plaintiff's supervisor and Human Resources

Manager.   Johnson interrogated Gibson on highly-personal, intimate topics, such as her menstrual cycles, private medical information, and her underwear.

71.   Defendant Johnson was Plaintiff's supervisor and the Human Resources Manager at PHA.   Johnson forcibly kicked Gibson under the table twice during an employee counseling meeting knowing she was pregnant.   Johnson also forced Gibson to pick up and carry cases of bottled water and canned soft drinks so as to injure Gibson and her unborn child.   There was no legitimate business reason for Defendant to kick the Plaintiff or force her to carry bottled heavy objects other than to harm her and her unborn child because Defendants felt inconvenienced by Plaintiff's pregnancy.

72.   Defendant PHA allowed Plaintiff to be subjected to Johnson's egregious discrimination, harassment, and battery by its own Human Resources Supervisor, through its reckless lack of training on lawful employment practices and policies.

73.   Defendants' conduct was intentional, reckless, extreme and outrageous.

74.   Defendants' conduct caused Plaintiff emotional distress so severe that no reasonable person could be expected to endure it.

WHEREFORE, Plaintiff requests the following relief:

18

a)   Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

b)   Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate the state laws asserted;

c)   Award such other and further relief as this Court deems just and proper.

## COUNT VI

## NEGLIGENT HIRING, TRAINING, RETENTION, AND SUPERVISION AGAINST DEFENDANTS PHA BODY SYSTEMS, LLC

75.   Plaintiff re-alleges the facts above as if fully set forth herein.

76.   This is a claim arising under the laws of the State of Alabama to redress the negligent and wanton hiring, training, supervision and retention of Defendants' employees.

77.   Defendants had a duty to provide a reasonably safe, non-discriminatory, and non-hostile work environment to Plaintiff.

78.   Defendant PHA negligently and wantonly hired Johnson.

79.   Defendant PHA failed to train, discipline, or terminate Johnson.

19

80.    Defendant PHA failed to train management and employees on policies prohibiting discrimination and harassment.

81.    Defendant PHA failed to administer policies against discrimination, harassment, and assault and battery in the workplace.

82.    Defendant PHA condoned Johnson's assault and battery of Plaintiff so as to intentionally harm Plaintiff and her unborn child.

83.    Defendants' intentional failures created a hostile, unsafe working environment for Plaintiff so as to cause Plaintiff physical and emotional harm.

84.    Plaintiff suffered physical and emotional harm as a result of Defendants' unlawful conduct.

WHEREFORE, Plaintiff requests the following relief:

a)    Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

b)    Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate the state laws asserted;

c)    Award such other and further relief as this Court deems just and

20

proper.

WHEREFORE, premises considered, Plaintiff requests all relief set forth herein.

**PLAINTIFF DEMANDS TRIAL ON ALL ISSUES BY STRUCK JURY**

Respectfully submitted,

Alicia K. Haynes ASB-8237-E23A
Sonya C. Edwards ASB-8848-S73E
Attorneys for Plaintiff

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
Phone:   (205) 879-0377
Fax:   (205) 879-3572
E-mail:   akhaynes@haynes-haynes.com
E-mail:   scedwards@haynes-haynes.com

**PLEASE SERVE THE FOLLOWING DEFENDANTS
BY CERTIFIED MAIL:**

PHA Body Systems, LLC
c/o Kwang H. Kwon, Registered Agent
139 Folmar Parkway
Montgomery, AL 36105

Jean Johnson
556 McKeithen Place
Millbrook, AL 36054